1  ANDRÉ BIROTTE, JR.
   United States Attorney
2  WILLIAM C. PEACHEY
   Assistant Director
3  Office of Immigration Litigation
   YAMILETH DAVILA
4  Trial Attorney
   MATTHEW SPURLOCK
5  Trial Attorney
   ANDREW B. INSENGA
6  Trial Attorney
   Office of Immigration Litigation
7  U.S. Department of Justice - Civil Division
        P.O. Box 878
8       Ben Franklin Station
        Washington, DC 20044
9       Phone: (202) 305-7816
        Fax:   (202) 616-4950
10      andrew.insenga@usdoj.gov
   Attorneys for DEFENDANT
11 Eric H. Holder, Jr., U.S. Attorney General

12              UNITED STATES DISTRICT COURT
            FOR THE CENTRAL DISTRICT OF CALIFORNIA
13

14                                    ) Case No.: CV 12-03358-R (PJWx)
   VICTOR MANUEL MUNOZ-PERALES )
15          Plaintiff,               ) STATEMENT OF
                                     ) UNCONTROVERTED FACTS AND
                                     ) CONCLUSIONS OF LAW
16      vs.                          )
                                     ) Hearing on Summary Judgment:
17 ERIC H. HOLDER, JR.,              ) April 15, 2013
   U.S. Attorney General,            )
18          Defendant                ) Honorable Judge Manuel L. Real
                                     )
19

20

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW - 1

Defendant submits the following Statement of Uncontroverted Facts and

Conclusions of Law pursuant to the Court's April 15, 2013, Order.

## STATEMENT OF UNCONTROVERTED FACTS

1. Plaintiff, Victor Manuel Munoz Perales, was born in Piedras Negras,

    Mexico.  Defendant ("Def.") Exhibit 1 (Certified Short-Form Birth

    Certificate for Victor Manuel Munoz Perales, with translation); Def.

    Exhibit 2 (Certified Long-Form Birth Certificate for Victor Manuel

    Munoz Perales, with translation); Def. Exhibit 3 (Plaintiff Dep.) at

    9:16-17.

2. Plaintiff claims he was born in 1950.  Def. Exhibit 3 at 9:14-15.

3. Plaintiff's parents are Bertha Perales de Munoz and Jose Lino Munoz.

    Def. Exhibit 1, 2.

4. Plaintiff's mother was a citizen of Mexico, not the United States, at the

    time of Plaintiff's birth.  Def. Exhibit 13 (Plaintiff's Response to

    Defendant's Request for Admission No. 3).

5. Plaintiff claims his father was born in Eagle Pass, Texas, in 1913.  Def.

    Exhibit 3 at 53:9-10, 16-17; 79:11-12.

6. Irma Munoz de Iturbe, Plaintiff's sister, was born in 1936 in Piedras

    Negras, Mexico.  Def. Exhibit 8 (Irma Iturbe Dep.) at 7:4-20.

1    7.  Enrique Munoz Perales, Plaintiff's brother, was born in 1944 in Piedras

2        Negras, Mexico.  Def. Exhibit 4 (Certified Short-Form Birth

3        Certificate for Enrique Munoz Perales, with translation); Def. Exhibit

4        5 (Certified Long-Form Birth Certificate for Enrique Munoz Perales,

5        with translation).

6    8.  According to the birth certificate of Enrique Munoz Perales, Petitioner's

7        father resided in Mexico at the time of Enrique Munoz Perales's birth

8        in 1944.  Def. Exhibit 5.

9    9.  Jose Lino Munoz Perales, Plaintiff's brother, was born in 1948 in Piedras

10       Negras, Mexico.  Def. Exhibit 6 (Certified Short-Form Birth

11       Certificate for Jose Lino Munoz Perales, with translation); Def.

12       Exhibit 7 (Certified Long-Form Birth Certificate for Jose Lino Munoz

13       Perales, with translation).

14   10. According to the birth certificate of Jose Lino Munoz Perales,

15       Petitioner's father resided in Mexico at the time of Jose Lino Munoz

16       Perales's birth in 1948.  Def. Exhibit 7.

17   11. According to Plaintiff's birth certificate, Petitioner's father resided in

18       Mexico at the time of Plaintiff's birth.  Def. Exhibit 2.

19   12. At her deposition, Ms. Iturbe, Plaintiff's elder sister, stated she lived with

20       her parents in Piedras Negras, Mexico, from her birth in 1936 until

1956.  Def. Exhibit 8 at 7:21-8:2; 9:12-14.  She explained her father worked in Eagle Pass during part of this period, but "would normally sleep at the house [in Piedras Negras, Mexico], and sometimes he would stay with his relatives in Eagle Pass."  *Id.* at 12:25-13:5.  She elaborated her father would only stay overnight at the home of his relative, Gustavo Munoz, in Eagle Pass "about once a week."  *Id.* at 29:24-25; 36:7-9.

13. Esperanza Minton-Munoz, the sister of Gustavo Munoz, resided in Eagle Pass, Texas, from her birth in 1933 until 1950.  Def. Exhibit 21 (Declaration of Esperanza Minton-Munoz)at ¶¶ 2, 3;  Ms. Minton provided a sworn declaration stating Plaintiff's father lived in Piedras Negras, Mexico, before 1950.  Def. Exhibit 21 at ¶ 4, 6.  She stated Plaintiff's father resided in Piedras Negras, Mexico, not with her and her family in Eagle Pass, as Plaintiff alleged.  *Id*. at ¶ 4, 6; *see* Exhibit 22 (Plaintiff's Response to Defendant's Interrogatory No. 6 with signature page).  She also stated Plaintiff's father only stayed overnight at her home about once a month when she was a child.  *Id*.

14. Plaintiff testified at his deposition his father "lived on the other side [in the United States], and he would come and visit over the weekends."  Pl. Exhibit A, p. 13:7-8.

15. Plaintiff's brother, Jose Lino Munoz Perales, testified at his deposition his father "did live in Eagle Pass, but he would go over and see us." Pl. Exhibit B, p. 25:15-16.

16. Plaintiff's parents married in 1941 in Piedras Negras, Mexico.   Def. Exhibit 15 (1941 Marriage Certificate, with translation).

17. Plaintiff's father registered for selective service in 1944 and 1945, and while the 1994 application contains some indications of residence in Texas, his 1945 application identifies his residence as Piedras Negras, Mexico. *See* Def. Exhibit 25 (Notice of classification, dated October 10, 1945); Def. Exhibit 26 (Notice of classification, dated 1944).

18. The death certificate for Plaintiff's father indicates he resided in Piedras Negras, Mexico, in 1960, when he died.  Def. Exhibit 17 (Death Certificate for Jose Lino Munoz, with translation).

19. Similarly, the 1968 visa application for Plaintiff's deceased brother, Enrique Munoz, indicates Plaintiff's father resided in Piedras Negras, Mexico when he died.  Def. Exhibit 16 (Visa Application for Enrique Munoz).

20. In 1963, Plaintiff's mother submitted a response to a questionnaire to the United States Department of State, which states Plaintiff's father lived

1    in the United States for only six years and came to Mexico with his

2    parents where he resided.  Def. Exhibit 18 (1963 Questionnaire by

3    Bertha Perales, with translation).  When asked where her spouse

4    resided from the age of sixteen, Plaintiff's mother stated:  "(My

5    husband) Calle Bravo Piedras Negras, Coah. [a]nd after – Galeana

6    902 Norte from 1929 until the year in which he died – Nov. 7, 1960."

7    *Id*. at 2.

8                        **CONCLUSIONS OF LAW**

9    1. A motion for summary judgment should be granted if there is no genuine

10      issue of material fact and the moving party is entitled to judgment as a

11      matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*,

12      477 U.S. 242, 247-48 (1986).

13   2. The moving party bears the initial burden of informing the court of the

14      basis for the motion and identifying the portions of the pleadings,

15      depositions, answers to interrogatories, admissions, or affidavits that

16      demonstrate the absence of an issue of material fact.  *Celotex Corp. v.*

17      *Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this

18      initial burden, the burden shifts to the non-moving party to present

19      specific facts showing that there is a genuine issue for trial.  Fed. R.

20      Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *see Ayala-Villanueva v.*

1      *Holder*, No. 2:09–CV–1272, 2011 WL 2791819 (D. Nev. 2011)

2      (unpublished), *transferred by Ayala-Villanueva v. Holder*, 572 F.3d

3      736 (9th Cir. 2009)).  "A mere scintilla of evidence supporting the

4      nonmoving party's position is insufficient:" the moving party will win

5      summary judgment unless there is "evidence on which a jury could

6      reasonably find for the non-moving party." *Rivera v. Philip Morris,*

7      *Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).

8   3. Plaintiff bears the initial burden to establish, by a preponderance of the

9      evidence, to produce "substantial credible evidence in support of

10      citizenship claim" that he derived United States citizenship from his

11      father.  *Alcarez-Garcia v. Ashcroft*, 293 F.3d 1155, 1157 (9th Cir.

12      2002) (citing 8 C.F.R. § 341.2(c)); *see Mondaca-Vega v. Holder*, ---

13      F.3d ---, 2013 WL 1760795, at *6 (9th Cir. April 25, 2013) (burden to

14      produce "substantial credible evidence in support of citizenship

15      claim").

16   4. The applicable law for determining citizenship of a child born abroad

17      when only one parent is alleged to be a United States citizen is the

18      statute that was in effect at the time the child was born.  *Runnett v.*

19      *Shultz*, 901 F.2d 782, 783 (9th Cir. 1990).

20

5.  The law in effect at the time Plaintiff alleges he was born – in 1950 –
    requires Plaintiff establish:  (1) his father was a United States citizen;
    and (2) his father resided in the United States for ten years between
    1913, his date of birth, and 1950, Plaintiff's alleged date of birth, and
    five years of residence must have been after 1929, the father's
    sixteenth birthday; and (3) he satisfies the retention requirement, as
    amended.  Nationality Act of 1940 § 201(g), 8 U.S.C. § 601(g)
    (1940).  *Id.*

6.  Section 504 of the Nationality Act of 1940 defines residence as the
    "place of general abode."  8 U.S.C. § 504 (1940).  The Supreme Court
    held residence under that section to mean "the principal dwelling
    place of a person," without regard to intent.  *Savorgnan v. United*
    *States*, 338 U.S. 491, 505 (1950).

7.  Regardless of the other requirements, Plaintiff has not presented more
    than a scintilla of evidence to establish his father resided in the United
    States for five years between 1929 and 1950.

8.  The primary evidence on which Plaintiff relies is not admissible and
    cannot defeat summary judgment.  *Anheuser-Busch, Inc. v. Natural*
    *Beverage Distribs.*, 69 F.3d 337, 345 n.4 (9th Cir. 1995).  The
    testimony of Plaintiff and his brother regarding events that occurred

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW - 8

1    before their births in 1950 and 1948, respectively, is not relevant and

2    not admissible.  Their testimony regarding such events is inadmissible

3    as it lacks foundation in personal knowledge.  *See* Fed. R. Evid. 602.

4    Moreover, their testimony is inadmissible to the extent it is hearsay.

5    *See* Fed. R. Evid. 802.

6    9.  To the extent Plaintiff relies on the testimony of his sister, Irma Munoz

7       de Iturbe, her testimony is equivocal regarding her father's residence

8       during this period.

9    10. The Selective Service records from this period are also equivocal.

10      Although the 1944 notice contains some indications of residence in

11      Texas, the 1945 notice states Plaintiff's father resided in Piedras

12      Negras, Mexico.  *See* Def. Exhibit 25 (Notice of classification, dated

13      October 10, 1945); Def. Exhibit 26 (Notice of classification, dated

14      1944).

15   11. In contrast to Plaintiff's equivocal evidence, other unequivocal official

16      documents establish Plaintiff's father resided in Mexico between 1943

17      and 1950.  The birth certificates for Plaintiff's brothers, Enrique and

18      Jose Munoz, and Plaintiff, born 1944, 1948, and 1950 respectively,

19      indicate Plaintiff's father was residing in Mexico at the time of their

20      births.  *See* Def. Exhibit 2, 5, 7.  Petitioner's sister, Irma Munoz,

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW - 9

1   testified she was born in 1936 in Piedras Negras, Mexico.  *See* Def.

2   Exhibit 8 at 7:4-20.  In addition, the 1963 form completed by

3   Plaintiff's mother indicates Plaintiff's father resided in Mexico after

4   the age of sixteen.  Def. Exhibit 18.  Further, the father's death

5   certificate indicates he ultimately passed away in Piedras Negras,

6   Mexico.   Def. Exhibit 17.

7   12.Plaintiff has not submitted "evidence on which a jury could reasonably"

8   find on his behalf.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146

9   (9th Cir. 2005).  Even assuming Plaintiff's father is a citizen, Plaintiff

10   cannot demonstrate his father resided in the United States for five

11   years after the age of sixteen and before Plaintiff was born because of

12   the unequivocal documents.  Accordingly, the Court grants

13   Defendant's Motion for Summary Judgment.

14

15   DATED: June 14, 2013

16                                    _____

                                     MANUEL L. REAL
17                                    UNITED STATES DISTRICT JUDGE

18

19

20